IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ESTECH SYSTEMS IP, LLC, | CIVIL ACTION NO. 2:22-cv-00005 |
| Plaintiff, | ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT |
| v. | **JURY TRIAL DEMANDED** |
| PETCO HEALTH AND WELLNESS COMPANY, INC., PETCO ANIMAL SUPPLIES, INC., AND PETCO ANIMAL SUPPLIES STORES, INC., | |
| Defendants. | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Estech Systems IP, LLC ("Estech" or "Plaintiff") files this original complaint against Petco Health and Wellness Company, Inc., Petco Animal Supplies, Inc., and Petco Animal Supplies Stores, Inc. ("Petco" or "Defendants") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## PARTIES

1.      Estech Systems IP, LLC is a Texas corporation, with its principal place of business at 3701 East Plano Parkway, Suite 300, Plano, Texas 75074.

2.      On information and belief, Petco Health and Wellness Company, Inc. is a corporation organized and existing under the laws of the state of Delaware with a place of business at 10850 Via Frontera, San Diego, California 92127.  On information and belief, Petco Health and Wellness Company, Inc. maintains a place of business in this district at 15942 Eldorado Pkwy, Frisco, TX 75035.  On information and belief, Petco Health and Wellness Company, Inc. may be

served c/o The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

3.       On information and belief, Petco Animal Supplies, Inc. is a corporation organized and existing under the laws of the State of Delaware with a place of business at 10850 Via Frontera, San Diego, California 92127.  On information and belief, Defendant Petco Animal Supplies, Inc. is a subsidiary of Petco Health and Wellness Company, Inc.  On information and belief, Petco Animal Supplies, Inc. maintains a place of business in this district at 15942 Eldorado Pkwy, Frisco, TX 75035.  On information and belief, Petco Animal Supplies, Inc. may be served c/o The Prentice-Hall Corporation System, Inc., 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

4.       On information and belief, Petco Animal Supplies Stores, Inc. is a corporation organized and existing under the laws of the State of Delaware with a place of business at 10850 Via Frontera, San Diego, California 92127.  On information and belief, Defendant Petco Animal Supplies Stores, Inc. is a subsidiary of Petco Health and Wellness Company, Inc.  On information and belief, Petco Animal Supplies Stores, Inc. maintains a place of business in this district at 15942 Eldorado Pkwy, Frisco, TX 75035.  On information and belief, Petco Animal Supplies Stores, Inc. may be served c/o The Prentice-Hall Corporation System, Inc., 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

## JURISDICTION AND VENUE

5.       This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

6.       Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391(b-c).

7.       Defendants are subject to this Court's specific and general personal jurisdiction pursuant to the Texas Long Arm Statute, due at least to Defendants' substantial business in this

forum, including (i) at least a portion of the infringements alleged herein; and/or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

8.      Specifically, Defendants intend to and do business in Texas, directly or through intermediaries and offer their products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the Eastern District of Texas.  Defendants are purposefully and intentionally availing themselves of the privileged of doing business in the State of Texas, including in this district.

9.      Defendants maintain at least one regular and established place of business in this district, including at 15942 Eldorado Pkwy, Frisco, TX 75035.

## THE TECHNOLOGY

10.     Estech is an affiliate of Estech Systems, Inc. ("ES Inc.,") which for more than 30 years has been a leading U.S.-based provider of end-to-end business phone solutions.  ES Inc.'s Network Operations Center is located in Plano, Texas.

11.     Since 1987, ES Inc. has sold more than 400,000 solutions to its customers, working with more than 1,500 certified partners nationwide.  Its customers include small and large businesses across the country.

12.     Recognizing that business doesn't get done without communication, ES Inc. provides powerful products that that are easy and simple to use.  ES Inc.'s products are engineered to make intelligent technology that is intuitive and user-friendly, empowers employee productivity, and fuels customer satisfaction.

13.     ES Inc.'s technology is American-engineered.  From its Plano, Texas headquarters, ES Inc. provides a full-solutions portfolio of modern business phone systems, including Cloud,

Hybrid, Pure IP, and SIP dial tone products. Given ES Inc.'s end-to-end product offerings, its customers are empowered to choose the product features they need and want.

14.     Estech Inc.'s products include the most integrated cloud PBX in the market—the award-winning ESI Cloud PBX; Voice over IP (VoIP) products and systems; and on-premises products. A cloud-based PBX is a sophisticated telephone exchange system that uses a cloud infrastructure to provide communication services, such as telephony services.

15.     VoIP transmits and receives voice communications over data networks, such as the Internet or private networks, using the Internet Protocol (IP).

16.     VoIP systems offer several advantages over traditional phone systems including, but not limited to, lower cost and more efficient network management.

17.     VoIP systems also enable integration of additional communication services with voice.

18.     Estech Inc. cloud-based VoIP products have handled billions of call minutes.

19.     Estech Inc. also provides U.S.-based, best-in-class technical support for its customers.

20.     The patents-in-suit, U.S. Patent Nos. 8,391,298 (the "'298 Patent"), 7,068,684 (the "'684 Patent"), 6,067,349 (the "'349 Patent"), and 7,123,699 (the "'699 Patent") (collectively, the "Estech Asserted Patents"), are generally directed to systems and methods for providing robust, feature-rich communications systems including, but not limited to, VoIP telephony and additional communication services that can be integrated with a VoIP telephony system.

## COUNT I
### Infringement of U.S. Patent No. 8,391,298

21.     Estech repeats and re-alleges the allegations in Paragraphs 1-20 as though fully set forth in their entirety.

22.      Estech owns all substantial rights, interest, and title in and to the '298 Patent, including the sole and exclusive right to prosecute this action and enforce the '298 Patent against infringers, and to collect damages for all relevant times.  The United States Patent and Trademark Office duly issued the '298 Patent on March 5, 2013.  A copy of the '298 Patent is attached as Exhibit A.

23.      The '298 Patent is titled "Phone Directory in a Voice Over IP Telephone System." The '298 Patent describes information processing systems that store a list of phone numbers, integrated with a VoIP telephony system, to provide those phone numbers to the user of a VoIP telephone.  The user can use that list to dial the telephone number of another user associated with the VoIP telephony system.

24.      The claims of the '298 Patent are not directed to an abstract idea.  For example, claim 1 of the '298 Patent recites a specific arrangement of devices and networking components. Together those devices and networking components enable a user of a first telecommunications device to observe a list of a plurality of telecommunications extensions.  The list of extensions is stored in a server within a specific networking configuration, and the user can select to view a subset of the extensions.  Taken as a whole, the claimed inventions of the '298 Patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the functioning and operation of information processing systems.

25.      The written description of the '298 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

26.      Defendants made, have made, used, imported, provided, supplied, distributed, sold, or offered for sale products and/or systems, including VoIP telephone systems and networking equipment utilized by Defendants ("Accused Instrumentalities").

27.      The Accused Instrumentalities provide VoIP-based voice calling and data-networking services to VoIP telephony devices.

28.      The Accused Instrumentalities use first, second, and third LANs that are coupled with a WAN.

29.      The Accused Instrumentalities include VoIP telephony devices connected to LANs, the VoIP telephony devices having telecommunications extensions associated therewith, the telecommunications extensions being coupled to the second and third LANs.

30.      The VoIP telephony devices include circuitry (i) enabling users of VoIP telephony devices to observe a list of telecommunications extensions; (ii) to automatically call one of the telecommunications extensions in response to a user selecting one of the telecommunications extensions from the list; and (iii) enabling the user to select between observing the list of telecommunications extensions coupled to the second LAN or the third LAN.

31.      The Accused Instrumentalities include servers in the second LAN that store telecommunications extensions accessed across the WAN.

32.      As described above, Defendants have directly infringed (literally or under the doctrine of equivalents) at least Claim 1 of the '298 Patent. Defendants' infringement in this regard is ongoing.

33.    Estech has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Estech in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

34.    Estech or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '298 Patent.

35.    Defendants have also indirectly infringed the '298 Patent by inducing others to directly infringe the '298 Patent.  Defendants have induced end-users, including Defendants' customers, partners, personnel, clients, and contractors, to directly infringe (literally or under the doctrine of equivalents) the '298 Patent by making and using the Accused Instrumentalities. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '298 Patent, including, for example, Claim 1 of the '298 Patent.  Such steps by Defendants included, among other things, advising or directing customers, partners, personnel, contractors or end-users to make or use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner.  Defendants are performing these steps, which constitute induced infringement with the knowledge of the '298 Patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '298 Patent.  Defendants' inducement is ongoing.

36.     Defendants have also indirectly infringed by contributing to the infringement of the '298 Patent.  Defendants have contributed to the direct infringement of the '298 Patent by its customers, partners, personnel, contractors, clients, and suppliers.  The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '298 Patent, including, for example, Claim 1 of the '298 Patent.  The special features include, for example, the devices and networking components recited in Claim 1, including the interrelation between those devices and networking components, that allow the claimed server to provide a list of extensions and for the user to select to view a subset of the extensions.  The special features constitute a material part of the invention of one or more of the claims of the '298 Patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

37.     On information and belief, Defendants have knowledge of the '298 patent at least as of the date when they were notified of the filing of this action.

38.     Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Estech's patent rights.

39.     Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

40.     Defendants' direct and indirect infringement of the '298 Patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Estech's rights under the patent.

41.     Estech has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Estech in an amount that compensates it for such

infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

42.     Estech has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Estech has and will continue to suffer this harm by virtue of Defendants' infringement of the '298 Patent.  Defendants' actions have interfered with and will interfere with Estech's ability to license technology.  The balance of hardships favors Estech's ability to commercialize its own ideas and technology.  The public interest in allowing Estech to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT II**
**Infringement of U.S. Patent No. 7,068,684**

43.     Estech repeats and re-alleges the allegations in Paragraphs 1-42 as though fully set forth in their entirety.

44.     Estech owns all substantial rights, interest, and title in and to the '684 Patent, including the sole and exclusive right to prosecute this action and enforce the '684 Patent against infringers, and to collect damages for all relevant times.  The United States Patent and Trademark Office duly issued the '684 Patent on June 27, 2006.  A copy of the '684 Patent is attached as Exhibit B.

45.     The '684 Patent is titled "Quality of Service in a Voice Over IP Telephone System." The '684 Patent describes information handling systems used to transmit voice using VoIP technology.  The information handling systems throttle the amount of data being transferred from a workstation connected to the VoIP telephone.

46.     The claims of the '684 Patent are not directed to an abstract idea.  For example, claim 36 of the '684 Patent recites specific steps performed by a specific arrangement of devices

and networking components and operations performed by those components. Together, those devices and networking components provide quality of service to audio information by throttling the amount of data being transferred through a VoIP telephony device. Taken as a whole, the claimed inventions of the '684 Patent are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of information processing systems.

47.    The written description of the '684 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

48.    Defendants have infringed the '684 Patent by making, having made, using, importing, providing, supplying, distributing, selling, or offering the Accused Instrumentalities for sale.

49.    The Accused Instrumentalities provide VoIP-based voice calling and data-networking services to VoIP telephony devices.

50.    The Accused Instrumentalities include VoIP servers such that audio information for VoIP-based voice calls is communicated between at least VoIP telephony devices and VoIP servers.

51.    The Accused Instrumentalities include workstations (including, but not limited to, for example, desktop computers, workstations, laptops, embedded devices, point-of-sale devices, and mobile devices) that send and receive data from data servers (including, but not limited to, for example, websites) that transfer data through VoIP telephony devices.

52.     The Accused Instrumentalities sufficiently throttle data sent from workstations to VoIP telephony devices to increase a rate of transfer of audio information during the communication of audio information, the data throttling comprises reducing a future amount of data from being transferred from the workstation if the amount of data exceeds a predetermined threshold.

53.     As described above, Defendants have directly infringed (literally or under the doctrine of equivalents) at least Claim 36 of the '684 Patent.  Defendants' infringement in this regard is ongoing.

54.     Estech has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Estech in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

55.     Estech or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '684 Patent.

56.     Defendants have also indirectly infringed the '684 Patent by inducing others to directly infringe the '684 Patent.  Defendants have induced end-users, including Defendants' customers, partners, personnel, clients, and contractors, to directly infringe (literally or under the doctrine of equivalents) the '684 Patent by making and using the Accused Instrumentalities. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '684 Patent, including, for example, Claim 36 of the '684 Patent.  Such steps by Defendants included, among other things, advising or directing customers, partners, personnel,

contractors or end-users to make or use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner.  Defendants are performing these steps, which constitute induced infringement with the knowledge of the '684 Patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '684 Patent.  Defendants' inducement is ongoing.

57.    63.    Defendants have also indirectly infringed by contributing to the infringement of the '684 Patent.  Defendants have contributed to the direct infringement of the '684 Patent by its customers, partners, personnel, contractors, clients, and suppliers.  The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '684 Patent, including, for example, Claim 36 of the '684 Patent.  The special features include, for example, the devices and networking components recited in Claim 36, including the interrelation between those devices and networking components, that throttle the amount of data being transferred through the telephone.  The special features constitute a material part of the invention of one or more of the claims of the '684 Patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

58.    On information and belief, Defendants have knowledge of the '684 patent at least as of the date when they were notified of the filing of this action.

59.    Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Estech's patent rights.

60.    Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

61.    Defendants' direct and indirect infringement of the '684 Patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Estech's rights under the patent.

62.    Estech has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Estech in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

63.    Estech has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Estech has and will continue to suffer this harm by virtue of Defendants' infringement of the '684 patent.  Defendants' actions have interfered with and will interfere with Estech's ability to license technology.  The balance of hardships favors Estech's ability to commercialize its own ideas and technology.  The public interest in allowing Estech to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT III
### Infringement of U.S. Patent No. 7,123,699

64.    Estech repeats and re-alleges the allegations in Paragraphs 1-63 as though fully set forth in their entirety.

65.    Estech owns all substantial rights, interest, and title in and to the '699 Patent, including the sole and exclusive right to prosecute this action and enforce the '699 Patent against infringers, and to collect damages for all relevant times.  The United States Patent and Trademark

Office duly issued the '699 Patent on October 17, 2006. A copy of the '699 Patent is attached as Exhibit C.

66.    The '699 Patent is titled "Voice Mail in a Voice Over IP Telephone System." The '699 Patent describes an information handling system for storing a voice mail message in a voice mail box in a voice mail system within a first local area network (LAN). A user can access and listen to the voice mail using a VoIP telecommunications device within a second LAN by connecting to the first LAN via a wide-area network (WAN), such as the Internet.

67.    The claims of the '699 Patent are not directed to an abstract idea. For example, claim 1 of the '699 Patent recites a specific arrangement of devices in a networking environment. Together those devices enable a user within a second LAN to access and listen to voice mail messages stored within a first LAN. Taken as a whole, the claimed inventions of the '699 Patent are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the functioning and operation of information processing systems.

68.    The written description of the '699 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

69.    62.    Defendants have infringed the '699 Patent by making, having made, using, importing, providing, supplying, distributing, selling, or offering the Accused Instrumentalities for sale.

70.     The Accused Instrumentalities operate under a routable protocol including, but not limited to, for example, TCP/IP or UDP/IP.

71.     The Accused Instrumentalities include VoIP servers that store a voice mail message in a voice mail box in a voice mail system within a first LAN.

72.     The Accused Instrumentalities include VoIP telephony devices coupled to the second LAN that provide a sensory indication when the voice message is stored in the voice mail box within the first LAN.  The VoIP telephony devices allow a user to access the voice mail system within the first LAN to listen to the voice message stored in the voice mail box.  The VoIP telephony devices allow a user to access the voice mail message stored in the voice mail box provided by the VoIP Servers by using communication protocols, including, but not limited to, for example, TCP/IP, UDP/IP, Session Initiation Protocol (SIP), MiNET protocol, Session Description Protocol (SDP), Real-time Transport Protocol (RTP), and Real-time Transport Control Protocol (RTCP) protocols to:  (i) establish a channel between the first and second LANs over the WAN; (ii) couple an audio path over the channel between the telecommunications device and the voice mail box; and (iii) stream voice data containing the voice message from the voice mail box to the telecommunications device over the audio path.

73.     The VoIP telephony devices and VoIP servers can establish a channel between the first and second LANs over the WAN, wherein the establishing includes:  (i) in response to an input at VoIP telephony devices, sending a user mail box connection message from the second LAN to the first LAN requesting a channel, wherein the user mail box connection message includes an extension associated with VoIP telephony devices and an identification of the voice mail box; (ii) assigning the channel by VoIP servers in the first LAN; and (iii) sending a connection established message from VoIP servers in the first LAN to the second LAN.

74.     As described above, Defendants have directly infringed (literally or under the doctrine of equivalents) at least Claim 1 of the '699 Patent. Defendants' infringement in this regard is ongoing.

75.     Estech has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Estech in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

76.     Estech or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '699 Patent.

77.     Defendants have also indirectly infringed the '699 Patent by inducing others to directly infringe the '699 Patent. Defendants have induced end-users, including Defendants' customers, partners, personnel, clients, and contractors, to directly infringe (literally or under the doctrine of equivalents) the '699 Patent by making and using the Accused Instrumentalities. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '699 Patent, including, for example, Claim 1 of the '699 Patent. Such steps by Defendants included, among other things, advising or directing customers, partners, personnel, contractors or end-users to make or use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner. Defendants are performing these steps, which constitute induced infringement with the knowledge of the '699 Patent and with the knowledge that the induced acts constitute infringement.

Defendants are aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '699 Patent. Defendants' inducement is ongoing.

78.     Defendants have also indirectly infringed by contributing to the infringement of the '699 Patent. Defendants have contributed to the direct infringement of the '699 Patent by their customers, partners, personnel, contractors, and suppliers. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '699 Patent, including, for example, Claim 1 of the '699 Patent. The special features include, for example, the devices and networking components recited in Claim 1, including the interrelation between those devices and networking components, that allow a user to access and listen to the voice mail using a VoIP telecommunications device within a second LAN by connecting to the first LAN via a wide-area network (WAN), such as the Internet. The special features constitute a material part of the invention of one or more of the claims of the '699 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

79.     On information and belief, Defendants have knowledge of the '699 patent at least as of the date when they were notified of the filing of this action.

80.     Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Estech's patent rights.

81.     Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

82.      Defendants' direct and indirect infringement of the '699 Patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Estech's rights under the patent.

83.      Estech has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Estech in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

84.      Estech has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Estech has and will continue to suffer this harm by virtue of Defendants' infringement of the '699 patent.  Defendants' actions have interfered with and will interfere with Estech's ability to license technology.  The balance of hardships favors Estech's ability to commercialize its own ideas and technology.  The public interest in allowing Estech to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT IV
### Infringement of U.S. Patent No. 6,067,349

85.      Estech repeats and re-alleges the allegations in Paragraphs 1-84 as though fully set forth in their entirety.

86.      Estech owns all substantial rights, interest, and title in and to the '349 Patent, including the sole and exclusive right to prosecute this action and enforce the '349 Patent against infringers, and to collect damages for all relevant times.  The United States Patent and Trademark Office duly issued the '349 Patent on May 23, 2000.  A copy of the '349 Patent is attached as Exhibit D.

87.     The '349 Patent describes a telephone and voice mail system.  When a calling party calls a user of the system, the system receives the caller's caller-ID information and associates that information with a voicemail message.  By doing so, the recipient of the voicemail can automatically call back the caller while listening to the voicemail message.

88.     The claims of the '349 Patent are not directed to an abstract idea.  For example, claim 12 of the '349 Patent recites a specific arrangement of devices and networking components. Together, those devices and networking components cause a voice mail system to receive caller-ID information and associate that information with a voicemail message.  By doing so, the recipient of the voicemail can automatically call back the caller while listening to the voicemail message. Taken as a whole, the claimed inventions of the '349 Patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of telephone and voice mail systems.

89.     The written description of the '349 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

90.     Defendants have infringed the '349 Patent by making, having made, using, importing, providing, supplying, distributing, selling, or offering the Accused Instrumentalities for sale.

91.     The Accused Instrumentalities include local area networks, VoIP devices such as telephones, and voice mail infrastructure, configured such that the voice mail system receives caller-ID information and associates that information with a voicemail message.

92.     The Accused Instrumentalities are configured such that the recipient of the voicemail message can automatically call back the caller while listening to the voicemail message

93.     As described above, Defendants have directly infringed (literally or under the doctrine of equivalents) at least Claim 12 of the '349 Patent.

94.     Estech has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Estech in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

95.     Estech and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '349 Patent.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Estech requests a trial by jury on all issues triable by a jury.

## PRAYER FOR RELIEF

Estech requests that the Court find in its favor and against Defendants, and that the Court grant Estech the following relief:

a.     Judgment that one or more claims of the Asserted Patents have been infringed, either literally or under the doctrine of equivalents, by Defendants or all others acting in concert therewith;

b.     A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '298, '684, and '699 Patents; or, in the alternative, an

award of a reasonable ongoing royalty for future infringement of the '298, '684, and '699 Patents by such entities;

   c. Judgment that Defendants account for and pay to Estech all damages to and costs incurred by Estech because of Defendants' infringing activities and other conduct complained of herein;

   d. Judgment that Defendants' infringements be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

   e. Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

   f. That this Court declare this an exceptional case and award Estech its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

   g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated:  January 4, 2022   Respectfully submitted,

By: /s/ Fred I. Williams
Fred I. Williams
Texas State Bar No. 00794855
Michael Simons
Texas State Bar No. 24008042
WILLIAMS SIMONS & LANDIS PLLC
The Littlefield Building
601 Congress Avenue, Suite 600
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
msimons@wsltrial.com

Todd E. Landis
State Bar No. 24030226
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366

Dallas, TX 75204
Tel: 512-543-1357
tlandis@wsltrial.com

John Wittenzellner
Pennsylvania State Bar No. 308996
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite A #453
Philadelphia, PA 19103
Tel: 512-543-1373
johnw@wsltrial.com

*Attorneys for Plaintiff Estech Systems IP, LLC*